IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Palmetto Pharmaceuticals LLC, | ) |
| | ) Case No. 2:11-cv-00807-SB-JDA |
| Plaintiff, | ) |
| | ) |
| v. | ) **ORDER** |
| | ) |
| AstraZeneca Pharmaceuticals LP, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

This matter is before the Court on Defendant's motion to strike [Doc. 113] and Plaintiff's motion for reconsideration of the Court's June 18, 2012 Order granting Defendant's motion for protective order [Doc. 117]. Pursuant to the provisions of Title 28, United States Code, Section 636 and Local Rule 73.02(C)(7), D.S.C., this magistrate judge is authorized to review pretrial motions in cases referred for pretrial management.

## PROCEDURAL HISTORY

On February 15, 2012, the parties filed a Joint Report outlining their proposed plans for completing a four-month period of fact discovery on the limited issue of infringement by inducement. [Doc. 81.] On February 16, 2012, the Court entered an Amended Scheduling Order per the parties' Joint Report. [Doc. 83.] A Second Amended Scheduling Order was entered on March 29, 2012, directing that (1) Plaintiff's expert reports limited to the issues of infringement and inducement be served by April 30, 2012; (2) Defendant's responsive expert reports be served by May 14, 2012; (3) Plaintiff' reply reports, if any, be served by May 21, 2012; and (4) fact discovery conclude no later than June 22, 2012. [Doc. 101.]

A Third Amended Scheduling Order was entered on May 29, 2012, extending the close of fact and expert discovery to June 29, 2012. [Doc. 112.]

On June 16, 2012, Defendant filed a motion to strike the cross-examination[1] deposition testimony of Plaintiff's expert Dr. Uri Elkayam and a motion for protective order, seeking to strike Dr. Elkayam's testimony with respect to and avoid questioning of Defendant's experts concerning sixteen publications allegedly first produced by Plaintiff at Dr. Elkayam's June 14, 2012 deposition. [Doc. 113.] On June 18, 2012, the Court entered an Order granting Defendant's motion for protective order and taking under advisement its motion to strike Dr. Elkayam's testimony with respect to the sixteen publications. [Doc. 114.] On June 20, 2012, Plaintiff moved for reconsideration of the Court's June 18, 2012 Order granting protection [Doc. 117], contending the publications were proper for cross-examination and that the fact that Defendant's experts did not have time to review them was irrelevant [Doc. 117-1 at 3].

On June 25, 2012, Defendant filed a response in opposition to Plaintiff's motion for reconsideration of the Court's June 18, 2012 Order [Doc. 124], and Plaintiff filed a response in opposition to Defendant's motion to strike [Doc. 125]. On June 26, 2012, Defendant filed a reply to Plaintiff's response in opposition.[2] [Doc. 128.] The motion to strike and motion for reconsideration are now ripe for review.

---

[1] For ease of reference, the Court will refer to Defendant's initial examination of Plaintiff's expert as direct examination, Plaintiff's examination in reply as cross-examination, and any further examination by Defendant as re-direct examination. Like references will be used for Plaintiff's and Defendant's examination of Defendant's experts.

[2] On June 27, 2012, Plaintiff filed a motion for leave to file a sur-reply. [Doc. 129.] Because of the expedited nature of the Court's ruling on the motions to strike and to reconsider, Plaintiff's motion for leave to file a sur-reply is denied. In light of this Order, to the extent Plaintiff would seek to file its own motion to strike, such motion should be filed expeditiously.

2

## THE PARTIES' POSITIONS

In its motion to strike and for protective order, Defendant seeks to strike Dr. Elkayam's testimony and avoid questioning of Defendant's experts concerning the sixteen publications allegedly first produced by Plaintiff at Dr. Elkayam's June 14, 2012 deposition. [Doc. 113.] Defendant alleges Plaintiff produced "sixteen never-before disclosed medical journal publications and declared that Dr. Elkayam was now basing his opinions on these publications" and attempted to supplement Dr. Elkayam's original expert report by "dropping additional materials into its Exhibit B without elaboration or explanation." [Doc. 113-1 at 7.] Defendant contends it prepared responsive expert reports relying on the opinions in Plaintiff's expert reports and that, due to the nature and complexity of the documents produced at Dr. Elkayam's deposition, Defendant was prejudiced in its ability to meaningfully examine Dr. Elkayam regarding the documents. [*Id.* at 5, 7.] According to Defendant, "Dr. Elkayham's testimony established that the sixteen new publications, and his opinion based on these publications, [was] designed to reply to [its] experts' reports." [*Id.* at 8.] Defendant argues the use of these publications is prejudicial because their experts timely served their responsive expert reports, adhering to the Court's deadlines, while Plaintiff is attempting to circumvent the governing scheduling order by submitting untimely replies to Defendant's expert reports and conducting "[d]iscovery by ambush." [*Id.* at 9.]

In response, Plaintiff argues that, in support of the timely served expert opinion of Dr. Elkayam, Plaintiff supplemented Exhibit B to Dr. Elkayam's expert report on May 22, 2012 to disclose additional supporting material received after the report was served. [Doc.

125 at 2–3.] Plaintiff explains the materials were primarily discovery responses and expert reports created after Dr. Elkayam's report was disclosed. [*Id.* at 3 n.2.] Further, Plaintiff explains that, prior to his June 14, 2012 deposition, "Dr. Elkayam reviewed additional articles that he felt supported the opinions already disclosed in his report" and that each additional article contained disclosures that directly related to opinions he had already expressed in his April 25th written report." [*Id.* at 3.] Plaintiff contends some of the articles, or supporting materials, located and/or reviewed by Dr. Elkayam on June 13, 2012 had previously been produced to Defendant, and the remaining articles were produced to Defendant at Dr. Elkayam's June 14, 2012 deposition.[3] [*Id.*; Doc. 125-1 (chart of articles).] Plaintiff argues Defendant had the opportunity to question Dr. Elkayam at the deposition but elected not to do so; conversely, in an effort to create a complete and accurate record, Plaintiff examined Dr. Elkayam as to each article, establishing precisely how each article further supported the opinions already disclosed in his April 25, 2012 report. [Doc. 125 at 3–4.] Plaintiff contends the "substance of the sixteen articles merely reinforced statements in Dr. Elkayam's previously disclosed opinions" and is inextricably intertwined with the substance of Defendant's own expert reports, i.e., the scientific understanding regarding the relationship between nitric oxide and cardiovascular health. [*Id.* at 4–5.]

---

[3] As previously stated, the Third Amended Scheduling Order extended the deadlines for fact and expert discovery to June 29, 2012. [Doc. 112.] Thus, the sixteen documents identified in Exhibit A [Doc. 125-1] appear to have been produced prior to the discovery deadline, although they were admittedly not identified as relied on by Dr. Elkayam in his expert report. In opposing Plaintiff's motion for reconsideration, Defendant, curiously, does not address Plaintiff's argument that a number of the documents about which Defendant complains were previously produced to Defendant in discovery prior to the expiration of the discovery deadline. [Doc. 124.] While the parties do quibble over whether there were sixteen or seventeen documents disclosed, it appears that at least the sixteen documents disclosed in Exhibit A were timely produced.

Additionally, Plaintiff argues that, contrary to Rule 26, Defendant is seeking to "'freeze' the scientific record prior to the end of discovery." [*Id.* at 5.] Plaintiff contends it provided updated "documents considered" lists for its experts because it felt its duty under Rule 26 was to make Defendant aware of the materials Plaintiff had given to its experts, and this was the purpose of the supplementation, not for Dr. Elkayam to offer opinions. [*Id.* at 6.] Regardless of whether Dr. Elkayam had specifically identified any articles, Plaintiff argues, they remained available to Plaintiff's counsel as material for proper cross-examination, for which no disclosure is required. [*Id.* at 10.]

## **APPLICABLE LAW**

**Reconsideration**

Under Rule 54(b) of the Federal Rules of Civil Procedure, "any order . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time" before the entry of a final judgment. A court's discretion to review an interlocutory order is not subject to the strict standards applicable to motions for reconsideration of a final judgment but, rather, falls within the power of the court to reconsider an earlier ruling to reach the correct judgment under the law. *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514–15 (4th Cir. 2003). In considering whether to revise interlocutory decisions, courts in the Fourth Circuit have looked to whether the movant presented new arguments, new evidence that could not have been previously obtained through the exercise of due diligence, or whether the court has "'obviously

5

misapprehended a party's position or the facts or applicable law.'"[4]  *United States v. Duke Energy Corp.*, 218 F.R.D. 468, 474 (M.D.N.C. 2003) (quoting *Fidelity State Bank, Garden City, Kan. v. Oles*, 130 B.R. 578, 581 (D. Kan. 1991)).  While this standard allows a court to conduct a de novo review of any of its prior rulings, a court should only modify its prior ruling when it is convinced either a prior ruling was incorrect or that changes in the record or the stage of the proceeding justify modification.  *See generally* Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, 18A *Federal Practice and Procedure* § 4478.1 (2d ed. 2010) (discussing competing interests).

**Scheduling Orders**

A court issues scheduling orders pursuant to Rule 16 of the Federal Rules of Civil Procedure.  The drafters of Rule 16 contemplated a court's scheduling orders would "'control the subsequent course of the action.'"  *Amcast Indus. Corp. v. Detrex Corp.*, 132 F.R.D. 213, 217 (N.D. Ind. 1990) (quoting Fed. R. Civ. P. 16 Advisory Committee Note to 1983 Amendment).  Rule 16 authorizes a court to control and expedite pretrial discovery through a scheduling order and subsection (b)(4) provides that a "schedule may be modified only for good cause and with the judge's consent."[5]  Fed. R. Civ. P. 16.  Indeed, a judge's scheduling order "is not a frivolous piece of paper, idly entered, which can be

---

[4] In contrast, under Rule 59(e), a motion to alter or amend a final judgment may be granted only "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice."  *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir.1998).

[5] "Properly construed, 'good cause' means that scheduling deadlines cannot be met despite a party's diligent efforts."  *Dilmar Oil Co., Inc. v. Federated Mut. Ins. Co.*, 986 F. Supp. 959, 980 (D.S.C. 1997) (citation omitted), *aff'd by unpublished opinion*, 129 F.3d 116, 1997 WL 702267 (4th Cir. 1997).  "[C]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief."  *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992).

6

cavalierly disregarded by counsel without peril." *Gestetner Corp. v. Case Equip. Co.*, 108 F.R.D. 138, 141 (D. Me. 1985). Scheduling orders are necessary tools in managing the court's caseload as "[i]t is well known that we litigate these days under the burden of heavy caseloads and clogged court calendars." *Id.* Courts in the Fourth Circuit take so seriously the interest in the scheduling order that, not uncommonly, cases are dismissed pursuant to the court's inherent right to control litigation before it, which "authority includes the power to order dismissal of an action for failure to comply with court orders." *Ballard v. Carlson*, 882 F.2d 93, 95 (4th Cir. 1989) (citing Fed. R. Civ. P. 41(b)).

**Rule 26**

Subsection (a) of Rule 26 outlines required disclosures, including disclosure of expert testimony. Fed. R. Civ. P. 26(a). Under Rule 26(a)(2), the identity of any person who may be used to present expert testimony at trial must be disclosed, along with an expert's report, "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). Under Rule 26(e), litigants have a duty to supplement or correct discovery responses that are incomplete or incorrect in some material respect, and with respect to expert reports, a party's duty to supplement extends both to information included in the report and to information given during the expert's deposition. Fed. R. Civ. P. 26(e). Any additions or changes to an expert's report or deposition must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due. Fed. R. Civ. P. 26(e)(2).

"Rule 26 disclosures are often the centerpiece of discovery in litigation that uses expert witnesses, [and a] party that fails to provide these disclosures unfairly inhibits its opponent's ability to properly prepare, unnecessarily prolongs litigation, and undermines

7

the district court's management of the case." *Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 278 (4th Cir. 2005). The clear purpose of Rule 26(a) is to enable a party to determine, test, and assess the opinions of disclosed experts so that it can properly prepare its case in response. *See* Fed. R. Civ. P. 26(a). In the same vein,

> Rule 26(e) envisions supplementation when a party's discovery disclosures happen to be defective in some way so that the disclosure is incorrect or incomplete and, therefore, misleading. It does not cover failures or omission because the expert did an inadequate or incomplete preparation. To construe supplementation to apply whenever a party wants to bolster or submit additional expert opinions would reek havoc in docket control and amount to unlimited expert opinion preparation.

*Akeva L.L.C. v. Mizuno Corp.*, 212 F.R.D. 306, 310 (M.D.N.C. 2002) (citations omitted). A party's failure to disclose in accordance with Rule 26 cannot be considered "justified" or "harmless" simply because the opposing party had an opportunity to depose the witness, which would shift to the opposing party the burden that Rule 26 indisputably places on the party calling the witness. *See Carr v. Deeds*, 453 F.3d 593, 605 (4th Cir. 2006).

**Rule 37**

Federal Rule of Civil Procedure 37(c)(1) allows a Court to exclude evidence that was not properly disclosed under Rule 26(a). "[T]he basic purpose of Rule 37(c)(1) [is] preventing surprise and prejudice to the opposing party." *S. States Rack & Fixture, Inc. v. Sherwin–Williams Co.*, 318 F.3d 592, 596 (4th Cir. 2003). Exclusion is prohibited in only two situations: (1) where the nondisclosure is substantially justified or (2) where the nondisclosure is harmless, Fed. R. Civ. P. 37(c)(1); the nondisclosing party bears the burden of establishing that a failure to disclose was substantially justified or harmless, *see*

*Go Med. Indus. Pty, Ltd. v. Inmed Corp.*, 300 F. Supp. 2d 1297, 1309 (N.D. Ga. 2003); *Rabello v. Bell Helicopter Textron, Inc.*, 200 F.R.D. 484, 489 (S.D. Fla. 2001); *Burney v. Rheem Mfg. Co., Inc.*, 196 F.R.D. 659, 691 n.29 (M.D. Ala. 2000).

The district court has broad discretion to determine whether a nondisclosure of evidence is substantially justified or harmless. *S. States Rack & Fixture*, 318 F.3d at 597. The Fourth Circuit has articulated five factors to determine whether the nondisclosure is substantially justified or harmless and whether exclusion of the evidence is warranted:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Id.* Application of Rule 37(c)(1)'s exclusion sanction "does not require a finding of bad faith or callous disregard of the discovery rules." *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 330 (4th Cir. 2011) (citing *S. States Rack & Fixture*, 318 F.3d at 598).

## **DISCUSSION**

**Motion to Strike**

As stated above, Defendant seeks to strike Dr. Elkayam's testimony concerning the sixteen publications allegedly not disclosed before the deadline for all expert reports had passed. [Doc. 113.] Defendant contends the use of these publications is prejudicial and amounts to "[d]iscovery by ambush." [Doc. 113-1 at 9.]

It is the Court's reasonable understanding that the deposition of Dr. Elkayam was noticed by Defendant for the purpose of examining Dr. Elkayam on the basis of his opinion outlined in his report. At the time of the deposition, the deadline for producing expert

9

reports and/or reply reports had expired. Therefore, Defendant was entitled to prepare for Dr. Elkayam's deposition based on the state of his report.[6]

While the Court understands the newly added documents had previously been produced and did not change Dr. Elkayam's opinion, the fact is the deadline for providing Defendant a complete expert opinion had passed without any request that the Court amend the deadline to allow further supplementation of the opinion.[7] As previously stated, the burden of establishing that a failure to disclose was substantially justified or harmless rests on the non-disclosing party. *See, e.g.*, *Go Med. Indus. Pty.*, 300 F. Supp. 2d at 1309. Contrary to Plaintiff's argument, its failure to disclose in accordance with the Rule cannot be considered "justified" or "harmless" simply because the opposing party had an opportunity to depose the witness. *See Carr*, 453 F.3d 593 at 605. Thus, Plaintiff has failed to provide the Court sufficient reason for failing to comply with the scheduling order.

Further, the Court finds Plaintiff's examination of Dr. Elkayam to be improper. Under the Federal Rules of Civil Procedure, the examination and cross-examination of a deponent is to proceed as they would at trial under the Federal Rules of Evidence. Fed. R. Civ. P. 30(c)(1). Consequently, a witness is subject to cross-examination limited to matters covered on direct examination. Fed. R. Evid. 611(b) (stating cross-examination should not go beyond the subject matter of the direct examination and matters affecting the witness's credibility). Plaintiff makes no argument that the use of the articles or publications was for the purpose of addressing subject matter raised by Defendant on

---

[6] "The purpose of a 'detailed and complete' expert report . . . is, in part, to minimize the expense of deposing experts, and to shorten direct examination and prevent an ambush at trial." *Ortiz-Lopez v. Sociedad Espanola de Auxilio Mutuo Y Beneficiencia de Puerto Rico*, 248 F.3d 29 (1st Cir. 2001).

[7] The deadline for reply expert reports was May 21, 2012. [Doc. 101.]

direct examination or for rehabilitation of the expert. To the contrary, Defendant refused to use the documents on direct examination of the expert.[8]

Based on the above, the Court finds the importance of the testimony obtained by Plaintiff was minimal because it did not change the opinion already given by Dr. Elkayam; there was no adequate reason provided for Plaintiff's failure to comply with the controlling scheduling order; the potential prejudice to Defendant was great in that Defendant was entitled to rely on the completeness of Dr. Elkayam's opinion in preparing for his deposition[9]; and the availability of a continuance to cure any prejudice is unavailable because the deadlines for expert reports has long past. Accordingly, the Court grants Defendant's motion to strike the deposition testimony of Dr. Elkayam with respect to the late-identified publications and orders that the testimony be stricken.

**Motion for Reconsideration**

As previously stated, Defendant moved for a protective order to avoid questioning of its experts concerning the sixteen publications. [Doc. 113.] The Court entered an Order granting Defendant's motion on June 18, 2012, in advance of depositions of Defendant's experts. [Doc. 114.] Plaintiff has moved for reconsideration of the Court's Order, arguing nothing in the Federal or Local Rules requires Plaintiff to give Defendant's witnesses adequate time to review the publications, no rule limits Plaintiff's examination of Defendant's experts to previously disclosed exhibits or materials properly relied on by

---

[8] Additionally, Plaintiff admits Dr. Elkayam did not rely on these publications in preparing his expert report. [Doc. 125 at 3 n.2.]

[9] Prejudice is created when expert reports do not reveal what the experts will testify to at trial, as would warrant striking reports, because defendants can only guess at the substance of the testimony, which adversely impacts their own expert reports. *See* Fed. R. Civ. P. 26(a), (e); 37(c)(1).

Plaintiff's own experts, and the substance of Dr. Elkayam's testimony is inextricably intertwined with the substance of Defendant's own expert reports such that Plaintiff should be entitled to examine Defendant's experts concerning the substance of Dr. Elkayam's cross-examination. [Doc. 117.]

Rule 26(c) provides that any party to an action, or any person from whom discovery is sought, may move for a protective order to protect the party or person from annoyance, embarrassment, oppression, or undue burden or expense. Fed. R. Civ. P. 26(c). All motions for protective orders must be supported by "good cause." *Id.* "To establish 'good cause' for a protective order under Rule 26(c), '(t)he courts have insisted on a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." In re Halkin, 598 F.2d 176, 193 (D.C. Cir. 1979) (quoting 8 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2035, at 265 (1970)), *overruled on other grounds by Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984). Upon consideration of the facts presented by both parties in response to the motion for protective order and motion to strike, the Court finds good cause does not exist to support the grant of a protective order in this matter.

Initially, upon consideration of Defendant's motion for protective order, the Court operated under the representation that the documents sought to be used by Plaintiff in the depositions of Defendant's experts had never been seen by Defendant. [Doc. 113-1 at 4, 7.] In its response is opposition, however, Plaintiff provided evidence that some of the articles or supporting materials at issue had previously been produced to Defendant and the remaining articles were produced to Defendant on June 14, 2012, prior to the

12

expiration of the discovery deadline. [Doc. 125 at 3; *see* Doc. 125-1.] This assertion is not contradicted by Defendant.

To the extent the sixteen documents identified by Plaintiff in Exhibit B to the expert report had been previously produced to Defendant, Defendant cannot claim surprise. While the Court notes the importance of the publications as they relate to a key issue in the case on infringement, the Court fails to find how Defendant is prejudiced by the use of documents produced within the time frame agreed upon for discovery in Defendant's experts' depositions.[10] Consequently, the Court grants Plaintiff's motion for reconsideration and vacates its previously entered Order of protection.

## **CONCLUSION**

Wherefore, based upon the foregoing, Plaintiff's motion for reconsideration [Doc. 117] is GRANTED, the Court's June 18, 2012 Order [Doc. 114] is VACATED, Defendant's motion to strike [Doc. 113] is GRANTED, and Defendant's motion for protective order [Doc. 113] is DENIED. Additionally, Plaintiff's motion for leave to file a sur-reply [Doc. 129] is DENIED.[11]

IT IS SO ORDERED.

s/Jacquelyn D. Austin
United States Magistrate Judge

June 29, 2012
Greenville, South Carolina

---

[10] The Court is not directing that Defendant's experts who may have provided an opinion contrary to the opinion of Dr. Elkayam are required to review and analyze these publications produced in discovery; however, Plaintiff may inquire into the expert's familiarity with the publications and their contents during the expert's deposition, granted the expert deposed has opined on the same issue.

[11] Going forward, due to the complexity of the issues in this matter, the Court will not entertain any motions for expedited determinations until all issues have been fully briefed by all parties.